May it please the court, my name is Bradley Cohn. I represent the appellants, Bayer Consumer Care and Bayer Healthcare. There is no question here that Belmora is passing off its flannex medicine as Bayer's. The Trademark Trial Appeal Board found this was not even a close case. The question is, does the law permit Bayer to stop this deception? This morning I hope to address three points. One, why Bayer does not need to be selling flannex in the United States to have a passing off claim. Two, why Bayer does not need to be selling flannex in the United States to petition to cancel Belmora's registration. And three, why Bayer Healthcare, as Belmora's competitor, has pled a cause of action for false advertising. Turning first to the passing off claim, the court below held that Bayer could not stop Mexican Americans from being deceived because Bayer was not using the flannex mark in U.S. commerce. That decision was flawed for a few reasons. First of all, even if Bayer has no protectable interest in the trademark flannex, it can still sue Belmora to stop it from passing off Belmora's flannex as Bayer's. And we know that from the Singer line of cases. Under those precedents... And this is for the Bayer that owns the flannex mark in Mexico. That's correct. You've got two Bayers. That's correct. Bayer Consumer Care owns the Mexican flannex mark. So that's the one that brings the false association passing off claim. That's correct, Your Honor. And under the Singer line of cases, the cases such as Singer, Blinded Veterans, Honey Brown Ale, the plaintiff had no protectable interest in the trademark. It wasn't even a trademark. It was the term at issue. And there was no protectable interest. And yet still, the plaintiff was permitted to bring a passing off claim to stop the defendant from deceiving consumers into thinking that there was a connection between the defendant's products and the plaintiff. Before you get too far down the road, are you abandoning your public use argument and you're putting all your eggs in the basket on passing off? When you say public, are you talking about the public association? Public use. You correct. To be clear, under the passing off, which is 43A1A, Bayer believes there's actually three alternative theories that the lower court should have ruled on and find why Bayer had a cause of action. One is the Singer line of cases. The second is the public association cases. Those are the cases where because the public associates a trademark with a plaintiff, the plaintiff can a cause of action to stop a defendant that's trying to deceive the public into thinking that there's a connection. Are those the cases your Honor is referring to? Yeah. And that's an alternative theory as to why a passing off claim under 43A1A would be available. The third basis for a passing off claim would be the principles of the well-known trademark doctrine that are incorporated into the Lanham Act. Under the... Well, Belmora and the District Court seem to say that, in sight to several Fourth Circuit cases, that seem to say that for a false association, false designation claim, that there's an initial requirement that the plaintiff have a mark and deduces from that that you have to use that mark in commerce in the U.S. So tell us why they're wrong about that or what differentiates your case from the Monte Carlo Casino case and Lamparella and some others. Sure. So let's take the International Bank Corp., the Monte Carlo Casino case first. In that situation, the plaintiff claimed that they had use in commerce and that was the basis for their cause of action. We're not claiming that we have use in commerce here. We're claiming that we have a reputation that is protectable under the Singer line of cases, the public association line of cases, the principles of the well-known mark doctrine. Those concepts and grounds for cause of action were not considered in the International Bank Corp. case because in the International Bank Corp. case, the plaintiff said we have use in commerce. We're not saying that here. We have other precedents and theories that support our passing off claim. I might also point out that in the International Bank Corp. case, we didn't have the section 14.3 petition to cancel that we have here, and so International Bank Corp. had a false advertising case, which would not have an International Bank Corp. In the Lamparella decisions and others like that Lone Star Saloon and others, those were what you might call typical trademark cases, where both sides had marks. And so there, too, the courts did not have an opportunity to consider passing off claims brought under the Singer line of cases, the public association cases, or the principles of the well-known mark doctrine. Well, the use in commerce, the thing that bothers me a little bit about the district judge's decision, he seemed to adopt the per se rule of use in commerce. You could have a reverse passing off case where you don't have the mark, so you're not using it in commerce, but are we able to give you relief under section 43 for passing off claim? Yes, Your Honor. I mean, first of all, you're not using it in commerce. That's correct, Your Honor. We don't claim that we are using in commerce. Under the Singer line of cases, there was no protectable trademark at all that the plaintiff had, and still the courts found that relief was available for passing off. Under the public association line of cases, the plaintiff in those cases, this is the New York Yankees' Evil Empire case or the IBM Big Blue case, the plaintiff was not using the trademark in commerce. It was because the public associated the trademark with the plaintiff, and the goal of what the courts were trying to do was to stop consumer confusion, because the Lanham Act is first and foremost a consumer protection statute, and as we know from this court's teaching in International Bank Corp., avoidance of consumer confusion is the ultimate end of all trademark law, and so what the courts were doing was saying, are consumers being deceived here, and if so, we're not going to allow that to happen, and so under the Singer line of cases or the public association cases or the principles of the well-known Mark Doctrine, we believe that this court can and should reverse the lower court's decision and allow Bayer the opportunity to demonstrate that confusion is pretty clear from the evidence that Balmoral was using an association of some sort to BCC's products in Latin America. If we assume that, what if you pled as your damages? How are you harmed here? Your Honor, the damage to Bayer Consumer Care is that its reputation is now in the hands of any negative experience that consumers have with Balmoral's product. Whatever that negative experience is, maybe it's customer service, maybe they're not getting the pain relief that they were hoping for, whatever that negative experience is, that hurts Bayer Consumer Care's reputation, because that reputation is no longer in its hands, and we have pled that damaged reputation in the complaint. Well, isn't it fair to say that Balmoral is the rightful owner of the Mark in the United States, because it was the first to use it here? Balmoral does own a trademark registration before Flannex, that was the subject of the cancellation action, and so, but that's, and they are selling product here, but merely by virtue of owning the registration and selling product here, almost like with a knockoff or a counterfeit, just by virtue of selling the product here doesn't mean that you can deceive consumers. Your Honor, I see that my time is up, unless you have any, we're going to give you all a little leeway today, because this is a very complicated case, and you're the last case on the docket, so it's a long time to lunchtime, so we're going to try to be equitable to everybody here. You haven't mentioned Lexmark yet, and I would have thought that would have been one of your strongest arguments as a Supreme Court's language in Lexmark. Thank you, Your Honor, for giving me that opportunity. I just haven't had a chance to get to it yet, but you're right. The Lexmark case, which was a Lanham Act case, and one of the things that the Lexmark case did is it pointed out in Section 1127 of the Lanham Act, the principles that underline what these kinds of cases are about, and they're about consumer protection, and they're about protection of commercial reputation. Bayer believes it falls within the Lexmark standard, which is the two-pronged standard. First, the plaintiff would have to show that it falls within the zone of interest of the statute, and Bayer believes it falls within the zone of interest for the statute, because, first of all, it's protecting a commercial reputation, which is one of the interests of the Lanham Act, and secondly, it is protecting consumers from confusion, which is another important goal of the Lanham Act. So we believe that Bayer falls within the first prong of the Lexmark standard. The second prong of the Lexmark standard is, are the defendant's actions approximately causing the plaintiff's injuries? Here, there's no question but that through its actions, Belmora is trading on the reputation and goodwill of Bayer Consumer Care, and therefore, we believe that with respect to the passing off claim, that Bayer does fit within the plaintiffs that would be entitled to a cause of action under Lexmark. So you're saying the court was wrong when it found that Bayer was clause, because it never used a plant X mark in the United States? That's correct, Your Honor. We think that the lower court focused on the use in commerce requirement, and that informed its ultimate Lexmark analysis, and that use in commerce analysis that it undertook was based on some of the language that we talked about in Lemporello and International Bank Corp. We believe those cases were different. They were either typical trademark cases or ones where the plaintiff argued, well, I have use in commerce, and therefore, the single line of cases, the public association cases, the principles of the well-known mark doctrine, they were never raised and not considered by the courts in those cases. Do we need the Lexmark cases? Do we need to use the Lexmark cases inside this case, this particular case? We don't believe it's necessary. If the court finds that that framework is helpful, we believe Bayer fits in it, but we don't believe it's necessary, because we believe, again, the precedents that we've talked about this morning provide Bayer with a cause of action for passing off. So you think, basically, the Singer-Murphy-Bed type cases are sufficient in and of itself to get your false association passing off claim past the motion to dismiss? Yes, Your Honor. Those were all cases where the defendant was deliberately trying to create a connection between its products and the plaintiff's products, even though there was no protectable term at interest. But it was really more about trying to deceive consumers. And in those cases, there was that intent, which we believe we have here. So we believe that that line of cases would support Bayer's position. Well, the Lemporello and the Monte Carlo Casino case both have this language about trademark infringement and false designation, false association claims having the same elements in common, the first being that it possesses a mark. And my question is, even though Lexmark was a false advertising claim under Section B, does that impact this finding of a required element of a mark in the Fourth Circuit cases? Well, those Fourth Circuit cases did predate Lexmark. If one were to look strictly at Lexmark, which, as Your Honor says, is a false advertising case, and so it's not a situation where the Supreme Court was considering a passing off claim. But Lexmark, in the Lexmark case, which was a false advertising case, the plaintiff was not using a trademark in commerce. And so that issue didn't arise. But what the Lexmark case did is they looked at simply the zone of interest of the statute. In the Lexmark analysis, they did not say that one of the zones of interest of the Lanham Act was that a plaintiff be using a mark in commerce. All right. Thank you very much, Counsel. Thank you, Your Honor. Mr. Yellen? Yes, Your Honor. Excuse me. Good morning, Your Honors. May it please the Court. I'm Lewis Yellen. I'm here today on behalf of the Patent and Trademark Office. The conduct that was alleged in this complaint is exactly the harm that Congress enacted the Lanham Act to address. The intentional deception of U.S. consumers by the owner of a registered U.S. trademark. The District Court fundamentally erred by concluding that the only party that could properly bring any claim under the Lanham Act is one that has a trademark registration or use of a mark, that is, rights that flow from what are called technical trademark rights. We know that that's incorrect most recently because the Supreme Court, in analyzing Section 43A in the Lexmark case and in the subsequent Palm Wonderful case, have said that 43A is one section of the Lanham Act that goes beyond trademark protection. Now, it is, of course, true that the Lanham Act provides important remedies for the owners of either registered marks or common law marks in the United States. But one of the critical purposes of the Lanham Act is to make actionable the deceptive and misleading use of marks in commerce. That's a quotation from the purposes provision of the Lanham Act. And we know that from Supreme Court precedent and this Court's precedent, that when Congress enacted the Lanham Act, one of the very things it was intending to codify was the common law claim of passing off. And as the common law Supreme Court cases addressing passing off have shown, neither party needs to have a trademark protection, excuse me, use of a mark or registration of a mark in order to assert a passing off claim. The Singer line of cases that Bayer cites is one example of one line of cases. The William R. Warner case that we cite is another line of cases. In that case, both parties had purely descriptive terms describing or naming their products. And the Supreme Court held that neither party had a trademark right, a right stemming from the use of the trademark or from the registration. Well, there wasn't registration at that time. Nevertheless, the Supreme Court held that the defendant was guilty of facilitating passing off of the plaintiff's product. Now, I'd like to, if I may, turn to Judge Agee's question about the Fourth Circuit's prior precedent, which seems to equate passing off claims with the requirement of a trademark infringement action. I would suggest to the court that that language is classic dictum. There is never a case in this court or in any other that we're aware of, except for the district court in this case, that has ever rejected a passing off claim because the plaintiff did not have a trademark. And so we think that it would be consistent with Lattimac to limit those statements as dicta, since they were not necessary for the decision in those cases. As my brother said, all of the cases in which the court made that statement involved claims of rights stemming from either registration or use of a mark in commerce. Every single one of them that we have been able to find. And Belmora has not found any alternative cases which would show that this court has actually held, meaningfully held, that the absence of a trademark infringement claim kills a passing off claim. So we think it would be advisable for this court to construe those prior statements as limited to the facts of those particular cases, which did involve those sorts of claims, and to consider in the first instance, as the TTAB did in the cancellation proceeding here, whether there's a cognizable claim for passing off. We do think that there is such a claim based, again, on the purposes of the Lattimac and the statutory text. The text of both Section 14.3 and 43A.1 focus on the conduct of the defendant. The cancellation provision 43, excuse me, 14.3 is concerned about blatant misuse of a mark. The question is whether the defendant who has registered the mark had engaged in blatant misuse of the mark. And the TTAB found that while the claim that was presented to it involving the claim of a corporation that did not have a right in trademark based on registration or use was a novel claim before the TTAB, that in fact it was completely congruent with the principles enshrined in the Lattimac, which were supposed to provide consumer protection for the TTAB to focus, as this court should, on the defendant's conduct and to ask whether or not the defendant's conduct offended the standard that the Lattimac has prescribed. What remedy would you be seeking, i.e. an injunction? The question of remedy, I think, is one that is best considered on remand. I believe that damages were sought in this particular case. The remedies that are available in a case like this are provided for in the Lattimac itself. The Lattimac does provide cancellation of a mark in a judicial proceeding. It also allows for damages. I think Judge Agee asked earlier what, or excuse me, it may have been you, Judge, excuse me for my confusion about how you would measure damages. I think those are all important and potentially complicated questions when you have only reputation for the one Bayer company as the injury that's alleged. But those are all questions that we were not able to consider in this case because the district court dismissed the case at the pleading stage. Well, there is a policy argument underlying this thing. If we, for example, sent it back in a district court order, an injunction, you'd actually be giving trademark relief on a supposedly non-trademark claim. I don't think that's right, Your Honor. Under section 1119, the court in any action under 43a has the authority to, for example, cancel a mark. That doesn't require, if you accept the argument that we're suggesting, Your Honor, that doesn't require the existence of a right under trademark. I don't disagree with you about the ability to prevail on a section 14 cancellation claim. But under 43, we'd be doing something you just don't normally do. With respect, I think that's not entirely correct, Your Honor. I'd point you to 15 U.S.C. 1119, which authorizes district courts in proceedings brought under section 3 to afford what would be considered equitable relief, such as, for example, the cancellation of a mark that has been improperly used. I want to be very clear. We're not taking any position about whether such relief would be appropriate in this case. We're not taking any position on the merits of this claim. We're only making the argument before the court that the district court made a grave mistake by dismissing this case at the pleading stage by not allowing Bayer to develop its claims and to prove its case as it did before the TTAB and to seek whatever relief it could establish was merited, given the facts, assuming that it prevailed. I take it that's all the relief you and Bayer, you can't speak exclusively for them, seek here as I understand it. Your view is, and you tell me if I'm incorrect, is that when the district court imposed this requirement of a pre-existing trademark, actually used in the U.S., that that was incorrect as you see it as a matter of law and the case would go back with that presumption removed and then you would just start from there. That's exactly correct, Your Honor. That is the government's position. As I understand it, that's Bayer's position, but of course, counsel can correct, Your Honor, if that's not in fact their view. That's the only relief that's, in our view, appropriate at this stage since the district court had no opportunity to consider anything else in this matter and dismissed the case at such an early stage. So does your Section 14 claim and Bayer's Section 43 claim do they rise and fall together? I do think that they are closely tied together, Your Honors, because Sections 14.3 and 43A are two provisions that courts and the TTAB have identified as incorporating a remedy for passing off. And I think similar arguments, I believe all of the parties in this case have relied on similar arguments to support both provisions. I would suggest to Your Honor that an additional reason to be concerned about the proper interpretation of this provision is, although I think largely the treaty arguments have gone to the wayside of this case, the United States does have obligations under the Paris Convention under Article 6bis. The government's interpretation, and I believe Bayer's interpretation of the Lanham Act, is congruent with the obligations that the United States has undertaken in the treaty. And just in our view, what would be a unexceptionable interpretation of the statute... We don't have to get into the treaty to resolve this case. Not at all, Your Honor, and I'm not suggesting that the court do that. I'm just suggesting that a reason to be concerned about the proper interpretation is the district court's interpretation at the very least creates tension with the United States obligations under the treaty and it is a very well-known canon of interpretation to construe statutory language consistent with treaty obligations whenever possible. All right, thank you very much. Thank you, Your Honors. Mr. Schwimmer, we'll give you a little extra time if you need it. Your Honor, may it please the Court, I am Martin Schwimmer of Leeson Ellis, appearing for Appellees Belmore and Jamie Belcastro. I am accompanied by Lauren Sable, Laurie Cooper, John Welch, and Craig O'Reilly. Good morning, Your Honors. We have a lot to get to. On 43A1A, Bayer did make three arguments in its brief and they now appear to have resurrected 6bis and or the well-known mark concept. I know that the panel has just concentrated on Singer and I'll happily talk about the Singer line, but I would like to comment about the public use and their international Bancorp arguments and to a certain extent 6bis. We believe that the public use arguments and the extraterritorial arguments are in fact preempted under B&B Hargis. In other words, they are new arguments as to why Bayer might have trademark rights in the United States. We believe there is a final unappealed decision in this case by the TTAB under Section 2D that says they do not have trademark rights in this country. With regards to 6bis... And that's relevant to the 43A and B claims? It is relevant solely for 43A1A in the sense that that is the holding that they do not have trademark rights in the United States. Well, if it's a passing off claim, why is that relevant? All right. It's time to talk about Singer. The government and Bayer characterizes the Singer lines of holding that plaintiff does not need a trademark, but they do not come forward and say what you do actually need to be a Singer plaintiff. And I actually want to pick up on Justice Floyd's point about injunctions. This is a fallback argument. They do not view themselves as a Singer plaintiff. They alleged rights in a trademark plan X, which is now turning out to be unprotectable. That makes the Singer case distinguishable, that point. In that case, you own them. Belmar owns them, a market common law. In the Singer case, neither one of them are. That is a mischaracterization of the facts of those cases. I believe that in all of those cases... I believe that Singer, in fact, proves our point, which is that a plaintiff under 43 A1A must own some form of protectable symbol in the United States. In all of these cases, Singer, Nabisco, Murphy Beds, these are businesses in United States commerce. The way in which the allegation of how did we know that defendant was talking about plaintiff was that they utilized some other symbols that were protectable. In all of these cases, the symbols that represent business identity, the United States business identity, that is what is being protected. So they indicate that these cases go beyond trademarks. I don't really believe that. Let's go to section 45, definition of trademarks, the laundry list of symbols. In all of those cases, what the bad behavior, once they say that they can utilize the generic trademark, in Murphy Bed, the defendant uses Murphy Bed Systems, which is a protectable trading name. In Singer, the defendant is using other photos and other references. These other references are what is how we know that plaintiff is being discussed. Was the distinction there that these parties at one time had a protectable U.S. trademark, or are they just because they're U.S. companies as opposed to a Mexican company? I think that in all of the Singer cases, we are talking about generic side cases. Yes, there was some business identity which remains after the generic mark. You can visualize the as a doughnut, which at the beginning- Well, there are arguments. I may have misinterpreted it. I thought their argument was, well, this is just your garden variety passing off claim. And even though, at least for the false association part, that company doesn't have a U.S. protectable trademark, but it doesn't need it for a passing off claim. And the damage comes because of misperceptions, confusion by consumers in the U.S. that damages them in different ways. What else do they need besides that for a passing off claim? Protectable United States trademark rights. And you can use the widest definition of trademark rights to encompass trading name or other symbols of a business identity. And they do not have that. And in every Singer- Does that have to be registered in the U.S.? No, because it's 43A1A. Therefore, these business symbols can be at common law. But in every Singer case, there is a protectable business identity in U.S. commerce. This is not- These Singer cases do not test the territoriality principle. Challenge them. What do they feel they need? They argue that they need merely a reputation, which, incidentally, we believe is not even plausible. I mean, what is the important date in this case? October 6, 2003. That is the day that Bilmora applied for a trademark application. If you look at Bayer's allegations of the nature of their reputation, you go through each allegation and ask yourself, what date are they talking about? They say that they're the leading pain reliever. That is irrelevant. They say that they have 100 million in sales. That is irrelevant. They've only been a mass-market product in Mexico for two years prior to 2003. And their allegation is that a mass-market product in Mexico, with no sales in the United States, with no advertising in the United States, with no third-party mentions in the United States- Let's say that all of what they do in Mexico bleeds over into the U.S. and you have all the movement across the border and back and forth, and that that, because of the way commerce works now, that that affects the American market. Well, there has been tourism and telecommunications for the entire period of time of the Paris Convention. And the way that we've rationalized the concept of bleed-through is through the six-month Paris Convention priority period, but we understand that trademark rights are territorial. And as for bleed-through, I mean, otherwise you're saying that tourists in Richmond from England somehow create English trademark, you know, an English trademark holder then has- can bring a passing-off action here. That's just not the case. And I'd like to- one last remark about Bayer. We spoke about injunction. In none of these Singer cases could you really tolerate an injunction of the generic term. You would be doing damage to the concept of a generic mark. I'm not quite sure Bayer is prepared to say that you're not- that they're not asking for an injunction of our use of mark clinics. What- would we be running counter to our precedent in McCarthy, which I think off the top of my head, an unregistered mark must be used in commerce to qualify for technical protection. Is that what McCarthy stands for? And if so, does that help or hurt you? Fourth Circuit law suggests that it's a two-element- that 43A1A is a two-element likelihood of confusion and ownership of prior trademark rights. And to obtain prior U.S. trademark rights, you need to use a trademark. What's your best case for that? Taco Cabana and Lamparello. And International Bank Corp. because that goes into the definition of what constitutes use- Did Lamparello involve a trademark infringement claim itself? No. It was primarily a domain name case. But Taco Cabana is certainly a trademark case, and that states that one of the elements is prior U.S. trademark rights. What's that have to do with passing off? Passing off is not a statutory term, and it really is about- Yes. Separate and distinct from trademark claims. It states that the defendant has utilized some sort of mark using the definition of mark in Section 45 so as to create a sense of origin, a false association with the source of origin. And that implies that that origin is a United States origin. Well, the TTAB found- I guess why would you argue reputation? Reputation doesn't matter. You've tried to associate yourself there. I think the TTAB found that, didn't they? The TTAB's decision was misrepresentation of source. That is the decision that we are appealing. We're saying that Bayer could not have properly brought that cancellation. Well, the simplest question I'd put to you, why would you go to the extent that you do in terms of packaging, marketing, et cetera, if you weren't relying on Bayer's reputation? Your Honor, on the day that they adopted the mark, Bayer had not filed for the United States trademark application. They had not done the paperwork in the FDA. Well, that's conceded. They were not in the market. The mark was available on the day they adopted it. I mean, their hopes may have been that Bayer would not ever enter the market. They have no way of protecting their reputation in the United States from your activity. Well, they have had since 1978 to spend the $325 on the United States trademark application. I agree with that. I mean, as a back stand now. Well, that brings up an important point. In their papers, Bayer says they have no intention to use the mark in the United States. They intend to warehouse the mark in the United States. So all of their allegations that their damage is about loss of control of a reputation. Well, as we point out in our papers, they took no action with regards to the United States for the first 25 years of their reputation. Furthermore, Lanham Act is hostile towards- They didn't need to until your client started to use the Flannex mark. I mean, you keep coming back, it seems like, to me to, maybe I'm misunderstanding it, to saying that under the Lanham Act, the false association provision. I think it was false advertising. That there is a condition preceded that you cannot have a claim unless you hold, as a plaintiff, unless you hold a U.S. trademark. Is that your position? Unless you're utilizing protectable trademarks in U.S. commerce, which normally involves doing business. And that's not a particularly high threshold because anyone who throws out a shingle- Is your answer, counsel, that you have to have a trademark in the U.S. to utilize 43A or B? Yes, your honor. So if we disagree with that, do you lose? No, I'm afraid that you would be in conflict with Taco Cabana. Well, maybe so, but you tell me that that doesn't answer my question. If we disagreed with you and found that the plain language of the Lanham Act did not require in the passing off portion of the statute that you have a trademark, would you then lose? Well, I don't believe that they would lose sales, and I don't believe they'd suffer damage- You're still not answering my question. Well, I'm saying that under the second prong of Lexmark, that they're not, they haven't fled approximate injury. Your honor, can we discuss the false advertising clause? Because I'm not, I'm not going to budge. I'm going to look at section 45 and say that's the definition of trademark, and I'm going to look at Lamparello and Barcelona and International Bank Corp and Taco Cabana and suggest that they are mischaracterizing the single line of cases. You need to have some business identity in U.S. commerce. Well, it occurred, assuming you're right on the first point, the false association claim, they've got to use the mark of commerce. But that's as to BCC. What about BHC on their claim of- All right. So we believe that under Lexmark, BCC cannot bring the false advertising claim. We acknowledge that BHC, because it sells a leaf, is a competitor and therefore has standing with regards to false advertising. However, we argue that it can be dismissed for two other reasons. First is that it is not a plausible allegation of proximate injury. In other words, these brochures are handed out to drugstore owners in 2007 to 2009, and somehow today someone doesn't buy a leaf in a Rite Aid enrichment. Don't believe that there is a proximate relationship between those brochures and lost sales to a leaf. Believe your claim there would be it's just a media call. I didn't hear that, Your Honor. Your claim there would be that the Bayer's pleading doesn't meet the Iqbal standard. No, the Lexmark standard. Well, the Iqbal standard for pleading the second Lexmark clause, although if they can repair that by repleting, I will not emphasize that point. What I would emphasize is that the statements in question do not fall under the subject matter of 43A1B. They have two categories of complaint of statements. The first one is the mere use of flannex itself. Nowhere do we see the double dipping here more clearly than saying that the use of flannex alone is an act of false advertising. Flannex is an arbitrary term and does not convey a characteristic or quality of the product. So it's your contention that BHC did not allege a prognosable commercial injury? Yes, they did not properly plead a recognizable commercial injury in that. They don't really say that Aleve loses sales. The government does say in their brief it's a fair reading. Now because they could just resolve that through pleading, I'm not going to emphasize that point. But no, it's not really a plausible relationship to Aleve sales. All right. Now as stated again, the use of the flannex mark per se is not under the subject matter of false advertising because it is an arbitrary term and does not convey a characteristic or quality about the product. Second, turning to the brochures, as we've argued in the briefs, we believe that these statements again are not properly under 43A1B for two reasons. First, they are statements of origin. When Bayer characterizes these claims in their papers, they say, what is the message of these ads? And they say, we are Bayer Mexico. Our view is if the statement is we are Bayer Mexico, that is a statement of origin, of trademark origin, and not properly under A1B. The other fair reading of these statements would say, in effect, we're popular, we're trusted, we'll give you big sales. These are vague, non-quantifiable claims and are therefore puffery. We acknowledge that the expression for generations is falsifiable. If you look at the brochures, JA169 and 171, if you look at the overall message of these brochures, which contain all sorts of promises about cardboard displays and things like that, the expression for generations, while falsifiable, is de minimis. And the best evidence of the fact that that term for generations is de minimis is that Bayer was aware of these statements. Would those decisions be made at summary judgment and not at a motion to dismiss? In cases such as NRAGNC, for example, this court is prepared to make determinations as to meaning at the 1236 if they believe that it is unambiguous. District courts in the Fourth Circuit have made puffery determinations at the 12B6. Now, I understand that we are at 12B6 and there's this question, what did these messages convey? And you're supposed to interpret it in the light most favorable to the non-moving party. Who better than the non-moving party to tell you what these statements mean? Bayer tells you that these brochures mean we are Bayer, Mexico. And I'm saying we will acknowledge that for purposes of this motion and say that that is not properly a statement of a quality or characteristic that 43A1B covers. Well, I guess Judge Agee's question is the same question that bothers me a little bit. This case just went away on 12B6 without any real consideration of what the evidence may show. It's just gone essentially on, I guess, an eight ball theory. With regards to A1A, Bayer acknowledges that it does not use a trademark in U.S. commerce. So we believe that is why it is appropriate for A1A. I mean, I don't think either side disagrees. And we think that's a matter of law. The question is whether it's passing off or not. Again, in a situation where there is simply no case in this circuit or Supreme Court case that gives protection to rights that arise outside of the United States, that's why it's amenable to dismissal of 12B6. With regards to false advertising, certainly Bayer, Mexico's false advertising can be disposed of as a matter of law. And with regards to the claim of Flannex per se on the box, that is clearly an improper recasting of a trademark infringement cause as a false advertising cause. With regards to the brochures, we believe that you can look at these statements and say, sell well or that they're going to be a big hit or that they're trustworthy. Trust me on that. That our own declarations, reasonable people don't rely on that. And furthermore, as we say, Bayer says what they think these advertisements mean. That's why this particular false advertising claim can be disposed of at the 12B6 motion. Do you want to touch on the registration of the 14, section 14 claim for a while? Right. Judge Lee, the first step is, Judge Lee looked at 14-3 and he says that there's not a lot of cases. All of the cases involved, even though they use the term passing off, they refer to them as passing off cases and describe the elements as number one, owning a trademark. So between his analysis of the 14-3 cases and that 43A1A is a similar enough statute, he's comfortable in saying that prior U.S. trademark rights is a requisite element of 14-3. The position is not more complicated than that, I'm afraid. Okay. Anything that you haven't had a chance to tell us that you want to tell us about? Your Honor, passing off is not a statutory term. It's actually the original form of trademark infringement where you utilize the trademark to such an extent that you not only created a false association as to the product, but association is to identity. It is not a magical tort, as the government in Bexar will have you say. It is the original form of trademark infringement. And to say that you don't need some form of trademark to passing off, and again, ask them what they think you do need. Remember, I wanted to remind you that the Rectanus case, Supreme Court case, they say there's no such thing as reputation apart from use of a trademark. Thank you, Your Honor. Very much. Mr. Cullen, you have some rebuttal time. Thank you, Your Honor. I'll try to be brief. I really only have four quick points to make. Counsel for Belmore indicates that we need to have some business identity in the U.S. under the Singer and Public Association line of cases. There's nothing in those cases that say that. But even if they did, we do have a business identity here. Their whole business model is based on it. We have a reputation among the relevant consumers, Mexican-Americans, and were it not for that goodwill and reputation, they wouldn't have a business. So we do have a business identity, even if the case is required one. Are you arguing VCC or VHC? Bayer Consumer Care, Your Honor. Bayer Consumer Care. With respect to Bayer Health Care, they come up with respect to the false advertising piece. And the question is whether or not the allegations in the complaint are sufficient to show approximate injury. We believe the allegations are there, Your Honors, because while we do not specifically state there are lost sales, actual harm or actual lost sales is not the standard in a false advertising case. It's likely harm is the standard in a false advertising case. And we do allege that the statements are false and that they're likely to influence purchasing decisions. So we believe that the allegations are sufficient to show that Bayer Health Care has pled a false advertising claim. Your passing off theory seems to indicate a requirement of bad intent. Does 43A18 text to that support that concept? So under the Singer line of cases, a bad intent does seem to be necessary under the Singer line of cases. You would certainly all the cases there do have an intent to deceive consumers under the Singer line of cases. In the public association line of cases, there's no discussion that bad intent is necessary, although it's hard to imagine a situation where someone would choose the identical mark for the identical product and make the kind of statements that were made in this case and not have a bad intent. But certainly in Singer, it seems like that is an element there in the public association cases. That's not discussed, but it certainly seems like that's what was happening in those cases. And under the principles of the well-known mark doctrine, whether or not that's necessary is not really something that this court needs to take up. Bill Moore's counsel indicated that Bayer is intending to warehouse a trademark. Bayer has no interest in warehousing a trademark. Warehousing is when you want to hold something for a future use. We're not intending to use this trademark. What we are doing is we're protecting our reputation among U.S. consumers who are being deceived here in the United States. Lastly, with respect to the Section 14.3 claim, the lower court had dismissed the Federal Circuit decision in Empresa Cubana, which had held that a plaintiff doesn't need to have use in commerce to bring up cancellation action under Section 14.3. The lower court said, well, that case involved a Cuban embargo statute, so that's a unique case. The Federal Circuit did acknowledge that there is a Cuban embargo statute, but that wasn't the basis for the Federal Circuit's decision in Empresa Cubana. In that case, they noted the Cuban embargo statute, but they didn't let the plaintiff off the hook on that. Instead, they quoted Lexmark and then conducted the customary analysis to see did that plaintiff have a real interest in the proceeding and a reasonable likelihood that they were going to be harmed, a reasonable belief that they were going to be harmed. And the Federal Circuit looked at it, didn't let them off the hook because they didn't have use, but said, yeah, they had a real interest in that case and a reasonable belief that they were likely to be harmed. And therefore, the Federal Circuit allowed the plaintiff, though they had no use of a mark, to proceed with the cancellation action under Section 14.3. That would be because 14.3 is essentially a passing-off statute. Yes, it requires a blatant misrepresentation. That's correct, Your Honor. Anything else, Mr. Cohen? Nothing further, Your Honors. Thank you very much. Thank you, Mr. Gallin. You have a little time left. Thank you, Your Honors. I also have four points which I can state briefly. To begin, I'd like to frame this by saying, to affirm the district court here, this court would have to be prepared to accept the proposition that a U.S. person could register a trademark of a foreign product that's well-known in the United States and present to the public the view or the insinuation that its product is the foreign product. That is just flatly inconsistent with the basic purpose of the Lanham Act to make actionable the deceptive use of trademarks registered in the United States. Judge Floyd, you asked what bearing the fact that Belmora has registered the mark here has. I think it's quite important. A registered mark comes with certain rights that are quite important under the Lanham Act, but it also comes with responsibilities. One of those responsibilities is not to use the mark to misrepresent the source of goods. That's what's been done here, and one cannot hide behind the rights that are provided by trademark registration if one uses that mark in a way that misleads and deceives the public. Counsel for Belmora suggested that there aren't any cases in which a court has upheld a passing off claim in which there were no rights in trademark whatsoever. That's just incorrect. Beside the William R. Warner case from 1924, the Supreme Court held that in that case, both parties had merely descriptive terms. That is, they never could be trademarked because they were merely descriptive of the product that they were selling. Nevertheless, the court held that the defendant was liable for facilitating passing off of its product as that of the plaintiff. Finally, on territoriality, I think this is quite frankly a red herring, Your Honor. This case involves the deception of U.S. consumers by the owner of a U.S. registered trademark for conduct occurring in commerce in the United States. It is true that the plaintiff bringing a claim has to assert injury. BCC has asserted an injury to its reputation. Lexmark has indicated that an injury to sales or reputation is sufficient to bring a commender to 43A. In 43A, those cases, advertising cases, there was not a single mention of trademark in either Palm Wonderful or Lexmark majority opinions. That suggests that you do not need to have a registered trademark in order to assert a reputational injury for a passing off. Thank you very much. Thank you, Your Honor. We certainly appreciate the arguments of counsel. This is a very complicated case. Your argument's been very helpful. I'd ask the clerk to adjourn court for the day, and then we'll come down and re-counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: G. Steven Agee, Henry F. Floyd, Stephanie D. Thacker